## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB WHEELER,<br><br>                    Plaintiff,<br><br>        v.<br><br>BLACK KNIGHT, INC., ANTHONY JABBOUR, CATHERINE L. BURKE, THOMAS M. HAGERTY, DAVID K. HUNT, JOSEPH M. OTTING, GANESH B. RAO, JOHN. D. ROOD, and NANCY L. SHANIK,<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jacob Wheeler ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder action brought by Plaintiff against Black Knight, Inc. ("Black Knight" or the "Company") and the members of Black Knight's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Black Knight to Intercontinental Exchange, Inc. ("ICE") (the "Proposed Transaction").

2.      On May 4, 2022, Black Knight entered into an Agreement and Plan of Merger with ICE and ICE's wholly owned subsidiary Sand Merger Sub Corporation (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, ICE will acquire Black Knight for $85 per share in a cash and stock transaction, with aggregate consideration of 80% cash and 20% stock.

3.      On August 19, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Black Knight stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for the Company and ICE, and the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) the background of the Proposed Transaction.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Black Knight stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5.      The special meeting for Black Knight stockholders to vote on the Proposed Transaction is currently scheduled for September 21, 2022.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Black Knight's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Black Knight's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of Black Knight common stock.

10.     Defendant Black Knight is a Delaware corporation, with its principal executive offices located at 601 Riverside Avenue, Jacksonville, Florida 32204.  Black Knight's shares trade on the New York Stock Exchange under the ticker symbol "BKI."

11.     Defendant Anthony Jabbour has been Executive Chairman of the Board and a director of the Company at all relevant times.

12.     Defendant Catherine L. Burke has been a director of the Company at all relevant times.

13.     Defendant Thomas M. Hagerty has been a director of the Company at all relevant times.

14.     Defendant David K. Hunt has been a director of the Company at all relevant times.

15.     Defendant Joseph M. Otting has been a director of the Company at all relevant times.

16.     Defendant Ganesh B. Rao has been a director of the Company at all relevant times.

17.     Defendant John. D. Rood has been a director of the Company at all relevant times.

18.     Defendant Nancy L. Shanik has been a director of the Company at all relevant times.

19.     Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Founded in 2013, Black Knight provides integrated software, data, and analytics solutions in North America and Internationally.  The Company operates through two segments: (i) Software Solutions; and (ii) Data and Analytics.  The Software Solutions segment offers software and hosting solutions comprising (i) MSP, a software as a service application platform for mortgage, home equity loans, and lines of credit; (ii) Servicing Digital, a web and mobile solution for consumers that provides easy access to customized timely information about their mortgages; (iii) Loss Mitigation, an integrated solution that supports retention and liquidation workouts; and (iv) Empower, a loan origination system used by lenders to originate mortgages, home equity loans, and HELOCs.  The Software Solutions segment also provides LoanCatcher, a cloud-based loan origination system designed for the needs of brokers; and LoanSifter PPE designed to meet

the needs of the broker community by providing access to investors and loan products. The Data and Analytics segment offers property ownership data, lien data, servicing data, automated valuation models, collateral risk scores, behavioral models, lead generation, multiple listing service, and other data solutions.

**The Proposed Transaction**

21.     On May 4, 2022, Black Knight announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **ATLANTA, NEW YORK & JACKSONVILLE** – May 4, 2022 – Intercontinental Exchange, Inc. (NYSE: ICE), a leading global provider of data, technology, and market infrastructure, today announced it has entered into a definitive agreement to acquire Black Knight, Inc. (NYSE: BKI), a software, data and analytics company that serves the housing finance continuum, including real estate data, mortgage lending and servicing, as well as the secondary markets. The cash and stock transaction values Black Knight at $85 per share, or a market value of $13.1 billion, and builds on ICE's position as a provider of end-to-end electronic workflow solutions for the rapidly evolving U.S. residential mortgage industry.
>
> The definitive agreement has been unanimously approved by the Boards of Directors of both companies.
>
> Black Knight, based in Jacksonville, Florida, has approximately 6,500 employees and is a long-time driver of innovation in the mortgage industry. The company provides a comprehensive and integrated ecosystem of software, data, and analytics solutions serving the real estate and housing finance markets. The Black Knight ecosystem adds value for clients of all sizes across the mortgage and real estate lifecycles by helping organizations lower costs, increase efficiencies, grow their businesses, and reduce risk.
>
> The addition of Black Knight's technology solutions, real estate and mortgage-related data assets, leading analytics, and its team of mortgage and technology professionals complements and strengthens ICE's rapidly growing mortgage technology business. The combination will result in improvements in the mortgage lending process for borrowers and lenders by increasing automation and efficiencies that lower the cost of obtaining a mortgage, while harnessing data that can help current homeowners lower their monthly payments and lessen the likelihood of default.
>
> "Since our founding in 2000, ICE's simple mission has been to make analog and opaque financial transactions more digital and transparent, beginning with

commodity markets, extending across a large array of asset classes, and most recently working to help streamline the mortgage industry," said Jeffrey C. Sprecher, Founder, Chair and CEO of Intercontinental Exchange. "Black Knight shares our passion for leveraging technology to serve customers and households, and, with our expertise in operating networks and marketplaces, our planned acquisition will bring to life a true end-to-end solution for the mortgage manufacturing and servicing ecosystem, benefitting aspiring and current homeowners across the United States."

"Black Knight has been on a successful journey to transform the mortgage industry by providing our clients with powerful, interconnected solutions that help them achieve greater efficiency and better serve their customers," said Anthony M. Jabbour, Chairman and CEO of Black Knight, Inc. "We believe this combination is the right next step in that journey. Black Knight and ICE share a common vision and commitment to deliver a better experience for our clients and the stakeholders we serve, and to ultimately streamline the homeownership process. By combining our expertise, we can deliver significant benefits to our clients and consumers by improving and streamlining the process of finding a home, as well as obtaining and managing a mortgage."

"This transaction will benefit ICE, Black Knight, and our collective shareholders," said Warren Gardiner, Chief Financial Officer of Intercontinental Exchange. "Black Knight's high-growth, recurring revenue stream will further complement our "all weather" business model, while the strength of ICE's balance sheet, and our combined cash flows, position this transaction to be accretive to adjusted earnings per share[1] in the first full year."

The transaction is expected to close in the first half of 2023, following the receipt of regulatory approvals, Black Knight stockholder approval, and the satisfaction of customary closing conditions.

**Key Financial Metrics:**

- Transaction valued at $85 per share, or a total market value of $13.1 billion, with consideration in the form of a mix of cash (80%) and stock (20%).

  - Cash consideration of $10.5 billion expected to be funded with newly issued debt and cash on hand at the time of close.

  - Stock consideration valued at approximately $2.6 billon based on ICE 10-day VWAP as of May 2, 2022 of $118.09.

- Black Knight shareholders can elect to receive either cash or stock, subject to proration, with the value of the cash election and the stock election equalized at closing.

- Enterprise value of approximately $16 billion represents ~15x fully synergized 2022 Black Knight adjusted EBITDA[2].

- Expect to realize cost synergies of $200 million, with one-third realized by year one, two-thirds by year three, and full synergies realized by year five.

- Expect to realize revenue synergies, net of related costs, of approximately $125 million by year five.

- Expected Black Knight transaction IRR of 10%

- Expect that the acquisition of Black Knight will be accretive to adjusted EPS[1] in the first full year post-close.

- Transaction expected to close in the first half of 2023, subject to satisfaction of customary conditions including receipt of Black Knight stockholder approval and Hart-Scott-Rodino (HSR) review and clearance.

Goldman Sachs and Co., LLC and Wells Fargo Securities, LLC are serving as lead financial advisors to Intercontinental Exchange, and Shearman & Sterling LLP and Morgan Lewis & Bockius LLP are serving as legal advisors to Intercontinental Exchange. J.P. Morgan Securities LLC is serving as the exclusive financial advisor to Black Knight and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Black Knight.

[1]Adjusted earnings per share (EPS) excludes amortization of acquisition-related intangibles, acquisition and integration expenses and the impact of equity earnings from unconsolidated investees, net of tax.

[2]2022 adjusted EBITDA represents the midpoint of Black Knight's FY22 adjusted EBITDA guidance range of $786 million to $803 million, burdened for stock-based compensation and adjusted for full synergies of $325 million.

**The Materially Incomplete and Misleading Proxy Statement**

22.     On August 19, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Black Knight stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for the Company and ICE, and the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; and (ii) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Black Knight's and ICE's Financial Projections and J.P. Morgan's Financial Analyses*

23.     The Proxy Statement fails to disclose material information concerning the financial projections for Black Knight and ICE.

24.     With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) the timing of management's projections, including when the projections were first created and when they were finalized and approved for J.P. Morgan's use in connection with the financial analyses underlying its fairness opinion; and (ii) the line items underlying the Company's (a) Adjusted EBITDA, and (b) Adjusted EPS.

25.     In addition, the Proxy Statement fails to disclose the unlevered free cash flows that Black Knight is expected to generate during fiscal years 2022E through 2026E and the terminal unlevered free cash flows utilized by J.P. Morgan in connection with its *Discounted Cash Flow Analysis*, as well as the definition of unlevered free cash flow and the underlying line items.

26.     Moreover, the Proxy Statement fails to disclose a summary of any financial projections for ICE that were reviewed or relied upon by Black Knight management, the Board, or J.P. Morgan in connection with the Proposed Transaction.

27.     The Proxy Statement also fails to disclose material information concerning J.P. Morgan's financial analyses.

28.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, in addition to the Company's unlevered free cash flows utilized in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25%; (iii) net debt and other adjustments for Black Knight as of December 31, 2021.

29.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by J.P. Morgan.

30.     With respect to J.P. Morgan's *Transaction Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by J.P. Morgan.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

31.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

32.     The Proxy Statement fails to disclose the details of the non-disclosure agreements ("NDAs") the Company entered into with parties during the process leading up to the Proposed Transaction, including whether any of the NDAs contain a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding a party submitting a topping bid for the Company.

33.     In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Black Knight's Financial Advisor," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Black Knight will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Black Knight**

34.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

35.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Black Knight is liable as the issuer of these statements.

36.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

37.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

39.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

40.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claims for Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

42.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Black Knight within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Black Knight and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

46.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Black Knight, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 31, 2022                          **ACOCELLI LAW, PLLC**


By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*